IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUCINA O'DEA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ALCHEMEE LLC AND TARO PHARMACEUTICALS U.S.A., INC.,<br><br>Defendants. | Case No. 1:24-cv-02755<br><br>Judge: Hon. Jeffrey I. Cummings<br><br>Mag.: Hon. Keri L. Holleb Hotaling |

**DEFENDANTS' OPPOSED MOTION TO TRANSFER[1]**

Six materially identical putative class actions, including this one, have been filed against corporate affiliates Alchemee LLC ("Alchemee") and Taro Pharmaceuticals U.S.A., Inc. ("Taro USA") in connection with Alchemee's Proactiv® acne-treatment products. In all cases, the plaintiffs (like Plaintiff here) contend that they were not made aware of the alleged possibility that those products may degrade into harmful levels of benzene when incubated at high temperatures for extended durations of time, and therefore that they overpaid for those products. As a matter of judicial efficiency, multiple federal courts should not be evaluating the same putative class claims against the same defendant in connection with the same product and the same alleged misrepresentations or omissions. One of those cases is pending in Defendants' home forum, which

---

[1] Pursuant to the Court's motion practice rules, Defendants state that they understand that Plaintiff intends to file a written response to this motion, and that the parties have conferred on a briefing schedule. Other plaintiffs in related actions have filed a motion with the Judicial Panel on Multidistrict Litigation ("JPML") seeking the formation of an MDL encompassing this and other cases. In view of that filing, the parties intend to jointly move that the Court stay this case pending a ruling on that motion by the JPML. If the Court nevertheless wishes to set a briefing schedule now for this motion, the parties respectfully propose that Plaintiff's opposition brief be due 30 days after the filing of this motion and Defendants' reply be due 21 days thereafter.

1

is the Southern District of New York ("S.D.N.Y."). *See Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1063–64 (N.D. Ill. 2015) (noting practice in this District to grant transfer motions where similar class action is pending in district where defendant is located). In the interest of justice and efficient case management, the Court should therefore transfer this case pursuant to 28 U.S.C. § 1404 to the S.D.N.Y.

## BACKGROUND

On March 6, 2024, a laboratory (Valisure) announced that it had filed an FDA citizen petition claiming that benzoyl peroxide ("BPO") in acne-treatment products degrades into unsafe levels of benzene when incubated at high temperatures for "a few weeks." Compl. ¶¶ 44–47. Certain of Alchemee's Proactiv® products were included in Valisure's alleged findings. *Id.* at ¶ 48. Soon after Valisure's announcement, Plaintiff filed this putative class action against Alchemee and Taro USA. This action is one of six materially identical putative class actions in five jurisdictions that were filed against Alchemee and its affiliates immediately following Valisure's report. Defendants have moved to transfer two of those cases to the S.D.N.Y., where a third case is based, and will move to transfer the fourth and fifth on the timetable directed by that court. The five related suits are:

1. *Howard v. Alchemee LLC*, No. 2:24-cv-1834-SB-BFM (C.D. Cal., filed Mar. 6, 2024);[2]

---

[2] *Howard* was filed by five non-California residents against Alchemee and Taro USA, both of which are New York residents (*see* Compl. ¶¶ 17–18). In addition to moving to dismiss for lack of personal jurisdiction, Alchemee and Taro USA have moved to transfer that case to the Southern District of New York, the same request as in this motion. Ex. 1 (*Howard*, No. 2:24-cv-1834-SB-BFM (C.D. Cal.), ECF No. 33 (motion to transfer)).

2. *Heermann v. Alchemee LLC*, No. 4:24-cv-00195-BCW (W.D. Mo., filed Mar. 19, 2024);[3]

3. *Ramos v. Alchemee LLC*, No. 5:24-cv-02230-BLF (N.D. Cal., filed Mar. 7, 2024);

4. *Teron v. Alchemee LLC*, No. 5:24-cv-01918-BLF (N.D. Cal., filed Mar. 28, 2024);[4]

and

5. *Judt v. Alchemee LLC* ("*Judt*"), No. 7:24-cv-02718 (S.D.N.Y., filed Apr. 10, 2024).

All six putative class actions seek recovery for economic losses only (*i.e.*, alleged overpayment for Proactiv)—no plaintiff in any case seeks recovery for any physical injury. In this case as in all five others, the plaintiffs premise their claims entirely on Valisure's alleged findings, contending based on those alleged findings that Defendants failed to disclose the potential for benzene degradation in Proactiv, which allegedly caused the plaintiffs economic loss. *E.g.*, Compl. ¶¶ 12–13; *Judt* Compl. ¶¶ 10–12 (attached as Ex. 3).

Comparing this case and *Judt* (pending in the S.D.N.Y., where Alchemee and Taro USA are headquartered, Compl. at ¶¶ 17–18, and to which Alchemee and Taro USA seek transfer), the allegations, claims, and theory are materially the same:

- They both name Alchemee and Taro USA as the only defendants. *Id.*; *Judt* Compl. ¶¶ 15–16.

- They were both filed on behalf of a putative nationwide class, defined in materially identical terms to include all United States consumers who purchased Proactiv products

---

[3] Alchemee and Taro USA have likewise moved to transfer *Heermann* to the Southern District of New York. Ex. 2 (*Heermann*, No. 4:24-cv-00195-BCW (W.D. Mo.), ECF No. 23 (motion to transfer).

[4] On May 22, 2024, the court consolidated *Teron* and *Ramos* and directed Defendants to file their motion to transfer following the disposition by the JPML of the motion for the formation of an MDL as noted *supra* at n.1. *Teron*, No. 5:24-cv-01918-BLF (N.D. Cal.), ECF No. 21.

3

for personal or household use within the limitations period. Compl. ¶ 101 ("all persons in the United States who purchased the Products for personal or household use within any applicable limitations period"); *Judt* Compl. ¶ 52 ("[a]ll persons who purchased one or more of Defendants' BPO Products in the United States for personal/household use within any applicable limitations period").

- They assert virtually identical allegedly common questions of law and fact. *Compare* Compl. ¶ 109, *with Judt* Compl. ¶ 56. These questions are all grounded in Valisure's alleged findings about BPO degradation in Proactiv, and both the *Judt* plaintiff and Plaintiff claim that they were misled about this alleged degradation and therefore overpaid. *Compare* Compl. ¶¶ 15, 44–48, 98, 142–44, *with Judt* Compl. ¶¶ 10, 14, 40–45, 80–82.

- They share the same theory of liability. *See, e.g.*, Compl. ¶¶ 12–13; *Judt* Compl. ¶¶ 10–12. In particular, both seek recovery for alleged economic injuries, and neither seeks recovery for any alleged physical injury. Compl. ¶¶ 108–09; *Judt* Compl. ¶¶ 56–57.

- They seek the same relief—damages, equitable relief (injunctive, declaratory, or otherwise), and attorneys' fees. Compl. at 32; *Judt* Compl. at 23–24.

Given the similarity of this case to *Judt* (as well as to *Howard, Heermann*, and the other pending related cases), Alchemee and Taro USA move to transfer this case to the S.D.N.Y.

## LEGAL STANDARD

Under 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district . . . where it might have been brought" to further "the interest of justice," and "[f]or the convenience of parties and witnesses." *Id.* Section 1404(a) is "designed to prevent" the waste of "time, energy and money" that occurs when "two cases involving precisely the same issues are simultaneously pending in different District Courts." *Cont'l Grain Co. v. Barge FBL-585*, 364

4

U.S. 19, 26 (1960); *De Falco v. Vibram USA, Inc.*, 2013 WL 1122825, at *10 (N.D. Ill. Mar. 18, 2023) (same).

In analyzing the § 1404(a) considerations—*i.e.*, the interest of justice and the convenience of parties and witnesses—courts undertake "a case-by-case consideration" of "the particular circumstances of each case" in light of "all factors relevant to convenience and/or the interest[] of justice." *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977–78 (7th Cir. 2010). The interest of justice in the context of § 1404(a) focuses on "the public's interest in conserving scarce judicial resources by efficient administration of the court system." *De Falco*, 2013 WL 1122825, at *10. "A decision to transfer venue under [§ 1404(a)] relies heavily on consideration of the interest of justice, which may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Preston v. Am. Honda Motor Co.*, 2017 WL 5001447, at *6 (N.D. Ill. Nov. 2, 2017) (citations omitted); *see Rsch. Automation, Inc.*, 626 F.3d at 978 (same).[5]

## ARGUMENT

**I.    THE INTEREST OF JUSTICE FAVORS TRANSFER.**

Courts use a variety of public-interest factors to determine "which venue is more likely to result in the swift administration of justice." *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 915 (N.D. Ill. 2009). These factors include (1) "trying related litigation together," *id.*; (2) "docket congestion and likely speed to trial in the transferor and potential transferee forums," *Rsch.*

---

[5] Indeed, courts in this District have transferred cases on interest-of-justice grounds without focusing on (or even notwithstanding) the convenience factors. *See, e.g.*, *De Falco*, 2013 WL 1122825, at *10–12 (transferring "substantially similar" case without considering convenience because "allow[ing] these parallel cases to proceed in two different district courts would undermine the public's interest in judicial economy"); *Ballotti v. Oppenheimer Funds, Inc.*, 2011 WL 13382871, at *5–6 (N.D. Ill. Feb. 23, 2011) (transferring "substantially similar" case even though convenience and other interest-of-justice factors were neutral).

*Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010); (3) "each court's relative familiarity with the relevant law," *id.*; and (4) "the relationship of each community to the controversy," *Judge v. Unigroup, Inc.*, 2017 WL 345561, at *4 (N.D. Ill. Jan. 24, 2017). Here, the balance of factors heavily favors transfer.

      **A.**      **Trying related litigation together strongly supports transfer.**

Crucially, this action and *Judt* are "so similar that it would be wasteful and duplicative to have two different courts familiarize themselves with the controversy" because they involve the same parties and "substantially similar" claims. *De Falco v. Vibram USA, Inc.*, 2013 WL 1122825, at *10 (N.D. Ill. Mar. 18, 2023). In choosing between federal districts where parallel putative nationwide class actions are pending, that the main defendant is located in one district tips the scale in favor of the action pending there. "[T]he apparent trend among Courts in this District is to grant transfer motions under the key geographic factors present here: the defendant is located in the transferee district, two similar class actions are pending in different federal districts and one of the class actions is pending in the transferee district." *Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1063 (N.D. Ill. 2015); *see Jasper v. Danone N. Am. Pub. Benefit Corp.*, 2023 WL 4492354, at *4 (N.D. Ill. July 12, 2023) (following this trend); *Jaramillo*, 664 F. Supp. 2d at 914–16 (same).

Furthermore, factor one is most closely linked to the "waste[] of time, energy and money" that § 1404(a) is "designed to prevent." *See Cont'l Grain Co.*, 364 U.S. at 26; *De Falco*, 2013 WL 1122825, at *10. Similar class actions "lend themselves to the possible consolidation of discovery and the conservation of time, energy and money, and the avoidance of the possibility of inconsistent judgments." *Ballotti v. Oppenheimer Funds, Inc.*, 2011 WL 13382871, at *5 (N.D. Ill. Feb. 23, 2011). Accordingly, in fact patterns like the one presented here, this factor is the most important. *Id.* at *5–6 (transferring solely to facilitate trying related litigation together).

Those precise circumstances—duplicative litigation pending in federal districts, including the one where the main defendant is located—are present here. Another putative class action is pending in the S.D.N.Y., where Alchemee and Taro USA are both headquartered, Compl. ¶¶ 17–18. That action is functionally identical to this one. *See* Ex. 3 (*Judt* Compl.) *passim*; *supra* at 3–4; *De Falco*, 2013 WL 1122825, at *10–11 (comparing the parties and the underlying "substance" plaintiffs' claims); *Jaramillo*, 664 F. Supp. 2d at 916 (same). Plaintiffs O'Dea and Judt both "purport to represent the same nationwide class of persons" who purchased the products at issue "for personal or household use within any applicable limitations period." Compl. ¶ 101; *Judt* Compl. ¶ 52; *see Jaramillo*, 664 F. Supp. 2d at 916. The defendants in both cases are Alchemee and Taro USA. Compl. ¶¶ 17–18; *Judt* Compl. ¶¶ 15–16.

In addition, the plaintiffs in both actions seek recovery based on the same underlying "substance." *See De Falco*, 2013 WL 1122825, at *11 ("A court must consider the substance of a claim over the form when determining whether a claim is duplicative."); *supra* at 3–4. When claims "have the same underlying facts," they are still "substantially similar" even if they are "based on different underlying law." *De Falco*, 2013 WL 1122825, at *11; *see Jasper*, 2023 WL 4492354, at *5 (explaining that two cases were "duplicative" and "practically identical" even where the claims were brought under different laws because those claims were based on the same conduct). In *De Falco*, the court found that claims brought under different consumer fraud statutes were substantially similar because they were premised on the "underlying issue [of] whether [the d]efendants misrepresented the health benefits that could be obtained by wearing [their products] in their marketing[.]" 2013 WL 1122825, at *11. Likewise, identical acts underlie Plaintiffs O'Dea's and Judt's theories of liability: the allegation that Defendants did not inform them of the purported connection between benzoyl peroxide in acne-treatment products and benzene. *See*

*supra* at 4; *compare* Compl. ¶¶ 15, 44–48, 98, 142–44, *with Judt* Compl. ¶¶ 10, 14, 40–45, 80–82.

Because this case and *Judt* are analogous along all metrics, this factor weighs "heavily" in favor of transfer. *See Jaramillo*, 664 F. Supp. 2d at 916 (finding that the ability to try related litigation together "weigh[ed] heavily in favor of transfer"); *Rosen*, 152 F. Supp. 3d at 1065 (same); *see also Jasper*, 2023 WL 4492354, at *5 (explaining that two cases with the same parties and overlapping claims were "so similar" that the court's "duplicative effort to become familiar with the controversy would be an obvious waste of resources").[6]

### B. Transfer will likely facilitate resolution of this case.

Factor two—the likely speed to trial in the transferor and potential transferee forums and relative docket congestion—also supports transfer. A New York court need not wade into "a personal jurisdiction quagmire" before the case may progress, *see Spherion Corp. v. Cincinnati Fin. Corp.*, 183 F. Supp. 2d 1052, 1059 (N.D. Ill. 2002), because Alchemee and Taro USA are both subject to general jurisdiction in New York—they may be sued there on any claim. They are not subject to general jurisdiction in this Court, nor in any of the other forums (outside of the S.D.N.Y.) in which related cases have been filed. The exercise of specific jurisdiction would require an analysis of each Defendant's minimum contacts with the forum as to each claim. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) (explaining minimum contacts analysis for establishing specific jurisdiction). (Indeed, Defendants have moved to dismiss for lack of personal jurisdiction in the first-filed case, where entirely non-California

---

[6] The fact that this action was filed five days before *Judt* does not counsel otherwise. "[T]he Seventh Circuit has upheld the use of the transfer analysis without giving the first-filed case any supplementary weight." *Rosen*, 152 F. Supp. 3d at 1065 (citing *Rsch. Automation, Inc.*, 626 F.3d at 982) (transferring first-filed action and "declin[ing] to impose the first-filed rule under circumstances where its application impedes the efficient and consistent resolution of the [related] class actions"). In any event, this action is not the first one filed, *see supra* at 2.

8

plaintiffs are suing these non-California Defendants, *see Howard*, No. 2:24-cv-1834-SB-BFM (C.D. Cal.), ECF No. 32 (motion to dismiss)). "Transfer to [New York] will therefore conserve judicial resources and lead to a more expeditious resolution of this lawsuit." *Spherion Corp.*, 183 F. Supp. 2d at 1059; *see Sacca v. Wyo. Whiskey, Inc.*, 2018 WL 11198064, at *4 (N.D. Ill. Feb. 7, 2018) (same).

Further, the S.D.N.Y. has a slight edge over this District for the median time it takes for a case to reach disposition or trial after filing.[7] Added to that, defendants anticipate seeking to relate or consolidate *Judt* and this case (and others) once in the S.D.N.Y.—reducing the replicative work by which multiple federal courts would otherwise be burdened. *See supra* at 2–3 & nn.2–4.

### C. Both Illinois and New York federal courts are capable of applying the laws under which Plaintiff brings her claims.

Plaintiff alleges violations of Illinois law as well as violations of the consumer fraud laws of ten other states, including that of New York. Compl. ¶¶ 70, 103 & n.22, 146. Because "federal courts are well-versed in applying the laws of foreign states," this factor is neutral. *Jasper*, 2023 WL 4492354, at *7 (citing *De Falco*, 2013 WL 1122825, at *11 n.10) (transferring case that "invoke[d] the consumer fraud acts of various states" to the Southern District of New York); *see Amoco Oil Co.*, 90 F. Supp. 2d at 962 (finding New York court capable of applying Illinois contract

---

[7] "For the purposes of evaluating this factor, the court used the reports from the Federal Court Management Statistics . . . . Of the numerous court management statistics available to the court's current analysis, the two most relevant statistics are (1) the median months from filing to disposition and (2) the median months from filing to trial." *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 962 (N.D. Ill. 2000). According to the United States District Courts National Judicial Caseload Profile, the 2023 median time from filing to disposition in civil cases was 5.7 months for this District and 5.6 months for the S.D.N.Y. The 2023 median time from filing to trial in civil cases was 56.9 months for this District and 42 months for the S.D.N.Y. https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2023_0.pdf.

law).

### D. New York has a stronger interest in this litigation than Illinois.

New York has a "strong" interest in regulating the activities of its corporations. *See Ballotti*, 2011 WL 13382871, at *6 (finding that the transferee forum "ha[d] a strong interest" in preventing its corporations from engaging in fraudulent or deceptive practices). Illinois's interest in this litigation, by contrast, is diminished "because the putative class here is national in scope," meaning that "there is no compelling community interest that would be preserved by the selection of one venue over another." *Rosen*, 152 F. Supp. 3d 1055, 1065 (N.D. Ill. 2015) (citing *Jamarillo*, 664 F. Supp. 2d at 917). This factor therefore favors transfer.

\* \* \*

"[G]ranting the motion to transfer enables [certain judicial] efficiencies," while "denying the motion forecloses them and further creates the prospect of inconsistent rulings on discovery and dispositive motions." *Rosen*, 152 F. Supp. 3d at 1064 ("."); *see supra* n.5. If the Court denies transfer, though, at least two putative class actions involving duplicative parties and claims grounded in materially identical facts would proceed in different courts, resulting in the waste of "time, energy and money" that § 1404(a) was "designed to prevent." *Cont'l Grain*, 364 U.S. at 26; *De Falco*, 2013 WL 1122825, at *10 (holding that "the interests of justice . . . is determinative and requires transfer" when a "substantially similar" putative class action was pending in another district)

## II. THE CONVENIENCE FACTORS ALSO FAVOR TRANSFER.

"To evaluate the convenience of one venue over another, courts look at the following five factors:" (1) "the situs of the material events"; (2) "the plaintiff's choice of forum"; "(3) the relative ease of access to sources of proof"; "(4) the convenience of the parties"; "and (5) the convenience of the witnesses." *Jaramillo*, 664 F. Supp. 2d at 913–14 (citation omitted). The balance of these

10

factors favors transfer.

*First*, "the situs of material events is in New York—not Illinois"—because Alchemee and Taro USA are headquartered in New York, "and there is evidence" there. *Jasper*, 2023 WL 4492354, at *3. "[T]he material events are not where customers made their purchases—a similar factual pattern that may have repeated itself across [locations] nationwide, in light of the multiple pending class actions." *Rosen*, 152 F. Supp. 3d at 1060. As in *Jasper* and *Rosen*, Plaintiff here purports to represent an assortment of plaintiffs from different states, and nothing distinguishes her alleged Illinois purchases from the alleged purchases of others nationwide. In contrast, Alchemee and Taro USA are both headquartered in New York, and that is where their "executives and most senior officers work[,] . . . direct, control, and coordinate the company[ies's] operations[.]" Ex. 4 (Boulukos Decl.) ¶¶ 2–3; *see Jasper*, 2023 WL 4492354, at *3.[8]

*Second*, Plaintiff's choice of forum merits "less deference when, . . . as here, another forum has a stronger relationship to the dispute." *Rosen*, 152 F. Supp. 3d at 1059–60. Unlike New York, where both Defendants are headquartered and where their senior executives and officers are located, Ex. 4 (Boulukos Decl.) ¶¶ 2–3, "the only relations to the Northern District of Illinois are that the named Plaintiff[] reside[s] in Illinois and the [products at issue] are available in Illinois," *Jaramillo*, 664 F. Supp. 2d at 914 (finding transferee forum had "stronger relationship to the dispute" because the defendant was "headquartered in [the transferee forum]" and "[its] actions w[ould] be the subject of this case" in which the products at issue were "available across the country" (citation omitted)). Some courts in this District have found expressly that the named

---

[8] Alchemee was previously based in California. In 2022, Alchemee (and the Proactiv brand) was acquired by Taro Pharmaceuticals Industries Ltd., *see, e.g.*, https://www.taro.ca/en/taro-completes-acquisition-alchemee, after which time Alchemee moved its headquarters to Hawthorne, New York, where Taro USA is headquartered.

11

plaintiff's choice of forum is "greatly discounted" in putative class actions. *See, e.g.*, *Jasper*, 2023 WL 4492354, at *3. This is because "if class certification occurs, the [chosen] venue will not be the home venue for all plaintiffs and any venue selected is bound to be inconvenient to some plaintiffs." *Id.* (citing *Jaramillo*, 664 F. Supp. 2d at 914). Other courts disagree because class certification may never occur. *See, e.g.*, *Rosen*, 152 F. Supp. 3d at 1060. But regardless of whether Plaintiff's choice to file in this District deserves less deference because she purports to represent a nationwide class, that choice deserves less deference because New York has a keener interest in the activity of its corporations within its borders than does Illinois in the uniform alleged misrepresentations and/or omissions by those corporations regarding their nationally distributed products. *See id.* at 1059 (reducing weight of the plaintiff's choice because Florida had a stronger connection than Illinois to the dispute).

*Third,* the relative ease of access of sources of proof is a wash. *See, e.g.*, *Ballotti*, 2011 WL 13382871, at *4 (explaining that the location of "potentially relevant documents . . . does not weigh in favor of either location" because "[m]odern technology has made it easy and cheap to transfer this kind of information between locations").

*Fourth and fifth*, the convenience of parties and witnesses is a wash, or may favor transfer. Most opinions in this District suggest that the focus of this factor is on non-party witnesses. *See, e.g.*, *Jasper*, 2023 WL 44923354, at *4 ("Although the convenience of non-party witnesses can be a critical factor, the convenience of employee witnesses—who tend to appear voluntarily—is of less concern."). There is no particular reason to anticipate that Illinois will be the location for such witnesses. To the extent that the Court takes into account the location of party witnesses, though, virtually all of Alchemee's and Taro USA's employees (*i.e.*, the likely defense witnesses in this case), including all of their executives, are located in New York, and no such employee working

12

on labeling, marketing, or testing issues is located in this District—only a single employee involved with Proactiv is located in Illinois, working in an unrelated capacity. *See* Ex. 4 (Boulukos Decl.) ¶ 4. "While it is true that the named Plaintiff resides in this District, the Plaintiff purports to represent a nation-wide class, and there likely are prospective plaintiffs in each and every state." *Simonoff v. Kaplan, Inc.*, 2010 WL 1195855, at *2 (N.D. Ill. Mar. 17, 2010); *see Jasper*, 2023 WL 4492354, at *3 (transferring to defendant's home forum despite named plaintiff and proposed class representative's local presence).[9]

On balance, the § 1404 convenience factors favor transfer.

### III. THIS CASE COULD HAVE BEEN FILED IN THE S.D.N.Y.

The last consideration is whether the transferee district is one "where [the civil action] might have been brought" initially. 28 U.S.C. § 1404(a). The S.D.N.Y. satisfies this requirement because it is both Defendants' principal place of business, and both are subject to general jurisdiction there. *See* Compl. ¶¶ 17–18; 28 U.S.C. § 1391(b)(1); 28 U.S.C. § 1391(c)(2).

### CONCLUSION

For the foregoing reasons, the Court should transfer this case to the Southern District of New York.

---

[9] Alchemee and Taro USA will commit now that Plaintiff's deposition may be taken in Illinois. *See Jaramillo*, 664 F. Supp. 2d at 915 (finding that for a "class of putative plaintiffs [of] all *nationwide* consumers," Illinois plaintiffs would "not be inconvenienced by a transfer" because the defendants "agreed to take [the p]laintiffs' depositions in Illinois").

Dated: June 12, 2024

Respectfully submitted,

*/s/ James R. Shultz*
James R. Shultz (ARDC No. 6304006)
jay.shultz@tuckerellis.com
Sherry A. Knutson (ARDC No. 6276306)
sherry.knutson@tuckerellis.com
TUCKER ELLIS LLP
233 S. Wacker Drive, Suite 6950
Chicago, Illinois 60606
Telephone: (312) 624-6300
Facsimile: (312) 624-6309

David S. Kurtzer-Ellenbogen
(*pro hac vice*)
dkurtzer@wc.com
Paul E. Boehm (*pro hac vice forthcoming*)
pboehm@wc.com
Jessica Bodger Rydstrom
(*pro hac vice forthcoming*)
jrydstrom@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Street, SW
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

## **CERTIFICATE OF SERVICE**

The foregoing **Defendants' Motion to Transfer** was filed electronically on June 12, 2024. Service has been made of all documents required to be served by Fed. R. Civ. P. 5(a) in a manner authorized by Fed. R. Civ. P. 5(b) and (c) by operation of the Court's electronic filing system pursuant to L.R. 5.9. Parties may access this filing through the Court's system.

Dated: June 12, 2024

Respectfully submitted,

*/s/ James R. Shultz*
James R. Shultz (ARDC No. 6304006)
jay.shultz@tuckerellis.com
TUCKER ELLIS LLP
233 S. Wacker Drive, Suite 6950
Chicago, Illinois 60606
Telephone: (312) 624-6300
Facsimile: (312) 624-6309